UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| TARYN R. M., | ) | |
| | ) | |
|       Plaintiff | ) | |
| | ) | |
| v. | ) | No. 2:19-cv-00567-JDL |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
|       Defendant | ) | |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability (SSD) and Supplemental Security Income (SSI) appeal raises the question of whether the administrative law judge (ALJ) supportably found the plaintiff capable of performing past relevant work as a cleaner/housekeeper. The plaintiff seeks remand on the bases that the ALJ erred in (i) failing to find that her wrist fractures met Listing 1.07, Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), for the period from the date of the fractures through January 31, 2018, (ii) in the alternative, assessing a physical residual functional capacity (RFC) for that time period that is unsupported by substantial evidence, (iii) assessing a physical RFC for the period after January 31, 2018, that is unsupported by substantial evidence, (iv) making a mental RFC determination unsupported by substantial evidence, and (v) failing to resolve a conflict in the vocational evidence concerning her ability to perform her past relevant work. *See*

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

Plaintiff's Statement of Errors ("Statement of Errors") (ECF No. 13) at 9-19.  I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through September 30, 2020, Finding 1, Record at 28; that she had the severe impairments of bilateral wrist fractures with pain, lumbar spine degenerative disc disease (DDD), post-traumatic stress disorder, and attention deficit/hyperactivity disorder, Finding 3, *id*. at 29; that she did not have an impairment or combination of impairments that met or medically equaled in severity one of the Listings, Finding 4, *id*.; that she had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she could frequently push and pull with her upper extremities, never climb ladders, scaffolds, or ropes, never crawl, could no more than frequently handle and use hand controls with both upper extremities, could not work in temperature extremes, with vibrations, or with exposure to unprotected heights or in dangerous moving equipment, needed to avoid tasks involving a variety of instructions or tasks but could understand sufficiently to carry out simple one- to two-step instructions and "detailed but uninvolved" written or oral instructions involving a few concrete variables in or from standardized situations, could not work with the public but could work with coworkers and supervisors, could work in two-hour blocks of time performing simple tasks over the course of a normal workday and workweek, and was able to adapt to simple changes in the work setting, Finding 5, *id*. at 32-33; that she could perform past relevant work as a cleaner/housekeeper, which did not require the performance of work-related activities precluded by her RFC, Finding 6, *id*. at 41; that, in the alternative, considering her age (30 years old, defined as a younger individual, on her alleged disability onset date, November 7,

2015), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, *id*. at 41-43; and that she, therefore, had not been disabled from November 7, 2015, her alleged onset date of disability, through the date of the decision, January 9, 2019, Finding 7, *id*. at 43. The Appeals Council declined to review the decision, *id*. at 1-4, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 4 and, in the alternative, Step 5 of the sequential evaluation process. At Step 4, the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. §§ 404.1520(f), 416.920(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

At Step 5, the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain

substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors also implicates Step 3 of the sequential evaluation process, at which step a claimant bears the burden of proving that her impairment or combination of impairments meets or equals a listing. 20 C.F.R. §§ 404.1520(d), 416.920(d); *Dudley v. Sec'y of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987). To meet a listing, the claimant's impairment(s) must satisfy all criteria of that listing, including required objective medical findings. 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3). To equal a listing, the claimant's impairment(s) must be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a).

## I. Discussion

### A. Failure to Find that Wrist Fractures Met Listing 1.07 through January 2018

To meet Listing 1.07, a claimant must demonstrate "[*f*]*racture of an upper extremity* with nonunion of a fracture of the shaft of the humerus, radius, or ulna, under continuing surgical management, as defined in 1.00M, directed toward restoration of functional use of the extremity, and such function was not restored or expected to be restored within 12 months of onset." Listing 1.07.

The ALJ acknowledged that the plaintiff (i) sustained bilateral distal radius fractures when she fell off of a ladder in November 2015, (ii) underwent open reduction internal fixation (ORIF) of her wrist fractures later that month, and (iii) continued to have pain and loss of supination, with a February 2017 CT scan of her left wrist revealing an incomplete solid fusion and a fixation plate projecting beyond the medial cortex of the radius, possibly causing her restricted motion. *See* Record at 34. The ALJ noted that in December 2017, following ongoing complaints of pain, the

plaintiff's hardware in both wrists was surgically removed, following which, in January 2018, she reported that, although she continued to have some limitation in her supination on the left, she "no longer ha[d] any pain[.]"  *Id*. at 34-35 (citation and internal quotation marks omitted).

The ALJ determined that the plaintiff's wrist fractures did not meet Listing 1.07, explaining that, "although the [plaintiff] did have nonunion of her left fracture, she did not have the requisite loss of function lasting for 12 months or more, which requires an inability to perform fine and gross movements effectively on a sustained basis."  *Id*. at 30.  She elaborated:

> Examples of functional loss showing this inability include inability to prepare a simple meal and feed oneself, inability to take care of personal hygiene, inability to sort and handle papers or files, and inability to place files in a file cabinet at or above waist level.  In this case, the [plaintiff] was independent with her personal care and daily activities within 12 months of her left hand fracture, and also returned to her job as a part-time housekeeper.

*Id*. (citations omitted).

The plaintiff contends that the ALJ erred in failing to find that her wrist fractures met the criteria of Listing 1.07 for the period through January 2018, when consolidation of her left radius was finally achieved.  *See* Statement of Errors at 9-12.  She argues that the "undisputed medical facts satisfy the requirements" of the listing "as there was not a solid union of the broken radius in the left wrist within twelve months and ongoing surgical interventions were required."  *Id*. at 10 (emphasis omitted).  She seemingly cites Listing 1.00M for the proposition that loss of function is not assessed until after a claimant has achieved maximum benefit.  *See id*. at 9 n.11.

However, as the commissioner counters, *see* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 15) at 4-5, to meet Listing 1.07, a claimant must demonstrate the requisite loss of functioning for a period of at least 12 months commencing on the date of the injury.

Listing 1.00M provides:

5

> *Under continuing surgical management*, as used in 1.07 and 1.08, refers to surgical procedures and any other associated treatments related to the efforts directed toward the salvage or restoration of functional use of the affected part. It may include such factors as post-surgical procedures, surgical complications, infections, or other medical complications, related illnesses, or related treatments that delay the individual's attainment of maximum benefit from therapy.

Listing 1.00M. In turn, Listing 1.00N states that, for purposes of Listings 1.07 and 1.08, maximum benefit from therapy has been achieved when "there have been no significant changes in physical findings or on appropriate medically acceptable imaging for any 6-month period after the last definitive surgical procedure or other medical intervention," at which point "[e]valuation . . . must be made on the basis of the demonstrable residual limitations, if any, considering the individual's impairment-related symptoms, signs, and laboratory findings, any residual symptoms, signs, and laboratory findings associated with such surgeries, complications, and recuperative periods, and other relevant evidence." Listing 1.00N.

These listings cannot fairly be read to dispense with a claimant's need to show the requisite functional loss *prior to* the achievement of maximum benefit from therapy. To the contrary, Listing 1.00M contemplates measures aimed at the "restoration of functional use[,]" Listing 1.00M, and Listing 1.07 presumes the loss of "functional use of the extremity" as a result of upper extremity fracture(s), Listing 1.07. Critically, Listing 1.00B defines functional loss of an upper extremity as an "inability to perform fine and gross movements effectively on a sustained basis[,]" Listing 1.00B(2)(a), "an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities[,]" Listing 1.00B(2)(c). Listing 1.00B(2)(c) elaborates:

> To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal

> hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level.

*Id.* The ALJ, hence, applied the correct standard in assessing whether the plaintiff's wrist fractures met Listing 1.07.

The plaintiff separately challenges the ALJ's conclusion that the listing was not met because she retained the ability to perform activities of daily living (ADLs), asserting that she struggled with her ADLs but that, "even if she then could have, without significant difficulty, managed to bathe, cook a meal, wash dishes, etc., these facts would not support an inference that she did not sustain a significant loss of function when she fractured both wrists as the listing requires." Statement of Errors at 11-12 & n.14. She asserts that even agency nonexamining consultant Robert Hayes, D.O., on initial review of her claim on October 19, 2017, acknowledged a significant loss of function as of that time period. *See id.* at 12 n.14; Record at 125-27.

This argument, on its face, is unavailing. Listing 1.00B(2)(c) makes clear that an ability to bathe, cook a meal, and wash dishes is inconsistent with a finding that a claimant has suffered the functional loss required to meet Listing 1.07. Listing 1.00B(2)(c); *see also, e.g., Goodwin v. Astrue*, Civil No. 10-cv-233-PB, 2011 WL 1630927, at *11 (D.N.H. Apr. 11, 2011) (rec. dec., *aff'd* Apr. 29, 2011) (ALJ supportably found that claimant had not carried burden to show he had a listing-level impairment of his wrists when, although he had some problems with personal hygiene, he retained ability to drive, pay bills, use a checkbook, buy groceries, collect coins, take care of laundry, cook, shop, and clean). In any event, the ALJ relied not only on the plaintiff's ADLs within 12 months of the fall in which she fractured her wrists but also on her ability to work part-time as a cleaner/housekeeper within that time period. *See* Record at 30.[2]

---

[2] At oral argument, the plaintiff's counsel pointed to his client's testimony as further supporting a finding that she had the requisite functional loss, asserting that she indicated that she had to drive with her knees and could not reach out

7

Remand, accordingly, is unwarranted on the basis of this point of error.

**B. Failure to Assess Separate Physical RFC for Period through January 2018**

The plaintiff argues, in the alternative, that even if the ALJ supportably found that her wrist impairments did not meet Listing 1.07 for the period through January 2018, she erred in assessing a uniform physical RFC for the entire period at issue. *See* Statement of Errors at 12-14. She asserts that the ALJ's approach was unsupported by substantial evidence, clashing not only with the opinion of treating physician Elizabeth Robinson, M.D., but also with that of agency nonexamining consultant Edward Ringel, M.D., who, on reconsideration of her claim on April 11, 2018, stated that Dr. Hayes' assessment of greater restrictions at the time of his review (October 19, 2017) was entirely appropriate. *See id.*; Record at 125-27, 171-74, 857-66. Again, I find no error.

The ALJ explained that she gave "minimal weight" to the opinion of Dr. Robinson, "who provided the [plaintiff] with a less than sedentary RFC based on the [plaintiff's] DDD and bilateral wrist conditions." Record at 39 (citation omitted). She noted that Dr. Robinson had "provided a check-the-box form with limited narrative, and her limitations are in excess of and inconsistent with the evidence of record as a whole." *Id*. As relevant here, she deemed Dr. Robinson's "lifting restrictions to accommodate the [plaintiff]'s hand grip/pain" and her finding that "the [plaintiff]'s pain would frequently interfere with her attention and concentration . . . inconsistent with the [plaintiff]'s significant improvement in pain and functionality in her wrists with hardware removal." *Id*. (citation omitted).

The ALJ gave "great weight" to the opinion of Dr. Ringel, whose "light RFC with postural, manipulative, and environmental limitations . . . fully accommodate[d] [the plaintiff's] wrist and

---

her hand to accept change at a drive-through given her loss of supination. However, the ALJ discredited the plaintiff's subjective allegations in part, *see* Record at 33-34, and the plaintiff did not separately challenge that determination.

8

back conditions," and "conversely . . . less weight" to the Hayes opinion "in light of the [plaintiff]'s improvement . . . with her hardware removal surgeries[.]" *Id*. at 38 (citations omitted). She explained that she found "Dr. Hayes's more restrictive RFC . . . not reflective of the [plaintiff]'s longitudinal functioning" and Dr. Ringel's "subsequent assessment . . . more consistent with the evidence of record as a whole." *Id*. (citation omitted).

As counsel for the commissioner noted at oral argument, despite Dr. Ringel's comment that the limitations assessed by Dr. Hayes were appropriate at that time, Dr. Ringel provided a "Current Evaluation[,]" *id*. at 174, the descriptive label to be used "in cases when the evaluation is for AOD [alleged onset date] through present and the duration requirement has been met[,]" Social Security Program Operations Manual System (POMS) § DI 24510.050(C)(I)(f). Dr. Robinson, as well, indicated that her evaluation spanned the entire period from the plaintiff's alleged onset of disability, November 7, 2015, through the date of her opinion, November 15, 2018. *See* Record at 857, 866. The ALJ, thus, resolved a conflict in the evidence between two competing RFC assessments for the period from the plaintiff's alleged onset date of disability through the date of the expert's opinion, which in the case of both Dr. Ringel and Dr. Robinson postdated the plaintiff's hardware-removal surgery.

The plaintiff, nonetheless, argues that the ALJ erred in assessing a single physical RFC for the entire claimed period, which she contends constitutes clear error because it is inconsistent with the undisputed medical facts. *See* Statement of Errors at 13.

The commissioner rejoins that (i) the court should hold that the plaintiff waived this point by failing to raise any request for a "closed period" of disability before the ALJ, (ii), in any event, this court has held that, even assuming *arguendo* that an ALJ has an obligation to consider a closed period of disability *sua sponte*, ALJs implicitly did so in finding no disability for the entire period

9

at issue, and, (iii) the plaintiff has not shown that the ALJ's adoption of the Hayes opinion for a closed period would have mattered, in the sense that it would have resulted in a finding of disability for a discrete period of time. *See* Opposition at 7-9, 15.

In response, at oral argument, the plaintiff's counsel asserted that his client had never sought and was not seeking a closed period of disability. Yet, the plaintiff argues that the ALJ erred in failing to assess two discrete periods of RFC findings – a close relation to, if not a clone of, a request for a closed period of disability. Critically, in both instances, a claimant seeks a bifurcated analysis of his RFC. *See* Statement of Errors at 14 (asserting that "the found RFC, as applied to the initial two plus years after the alleged onset, is not supported by substantial evidence"); *Bowman v. Astrue,* Civil No. 09-161-B-W, 2009 WL 5216060, at *2 n.3 (D. Me. Dec. 29, 2009) (rec. dec., *aff'd* Jan. 19, 2010) ("In a 'closed period' case, the decision maker determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of his decision.") (citation and internal quotation marks omitted). The plaintiff, therefore, seeks what amounts to a closed period of disability.

"[T]his court has previously rejected a contention that an [ALJ] failed to consider a closed period of disability when, as here, he found that a claimant was not disabled from her alleged onset date through the date of the decision, a time frame that by definition included any closed 12-month period of disability." *Parker ex. rel. Parker v. Comm'r, Soc. Sec. Admin.*, Civil No. 2:13-CV-19-DBH, 2014 WL 220705, at *8 (D. Me. Jan. 21, 2014) (citation omitted). This, alone, is fatal the plaintiff's claim for remand on this basis. In any event, even assuming error, the plaintiff makes no attempt to demonstrate that the adoption of the limitations assessed by Dr. Hayes would have led to a finding of disability during for the period through January 2018, *see* Statement of Errors at 12-14, rendering any error harmless, *see, e.g., Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)

("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); *Archer v. Colvin*, Civil No. 1:13-cv-00018-NT, 2014 WL 457641, at *3 n.3 (D. Me. Feb. 4, 2014) ("Remand requires a showing that the outcome of the claim for benefits would likely be different if the [claimant]'s view of an issue is correct.").

Remand, accordingly, is unwarranted on the basis of this point of error.

### C. Failure to Assess a Supportable Physical RFC for Period after January 2018

The plaintiff next contends that the ALJ's reliance on the Ringel assessment is misplaced for the period after January 2018 because Dr. Ringel had the benefit of review only of her surgeon's operative report and two brief post-surgery follow-up notes dated December 27, 2017, and January 31, 2018. *See* Statement of Errors at 14. As a result, she reasons, Dr. Ringel's RFC assessment was more in the nature of a prediction than an assessment of her post-surgical limitations, and the ALJ interpreted raw medical evidence in filling in the gap. *See id*. at 14-16. She asserts that, for this period, the ALJ should have adopted the opinion of Dr. Robinson, the only expert who was aware of her response to post-surgical physical therapy. *See id*. at 15.

As the commissioner notes, *see* Opposition at 17, the plaintiff's premise that Dr. Ringel did not have the benefit of review of records documenting her response to physical therapy is erroneous. Dr. Ringel noted that he had reviewed records through February 2, 2018, in which the plaintiff reported that she was doing much better, recovering without complications, and continuing with physical therapy. *See* Record at 168. The ALJ did not derive the plaintiff's physical RFC by interpreting raw medical evidence postdating the Ringel opinion but, rather, adopted the Ringel RFC assessment on the basis that it was not only well-supported but also consistent with the longitudinal evidence of record, including that unseen by Dr. Ringel. *See id.* at 38-39. In so doing, she did not exceed the bounds of her competence as a layperson. *See,*

*e.g., Anderson v. Astrue*, No. 1:11-cv-476-DBH, 2012 WL 5256294, at *4 (D. Me. Sept. 27, 2012) (rec. dec., *aff'd* Oct. 23, 2012), *aff'd*, No. 13-1001 (1st Cir. 2013) ("While an [ALJ] is not competent to assess a claimant's RFC directly from the raw medical evidence unless such assessment entails a common-sense judgment, he or she is perfectly competent to resolve conflicts in expert opinion evidence regarding RFC by, *inter alia*, judging whether later submitted evidence is material[.]") (citation and internal quotation marks omitted).

Remand, accordingly, is unwarranted on the basis of this point of error.

### D. Failure to Assess Mental Limitations in Working with Others

The plaintiff next faults the ALJ for omitting any limitation on her ability to interact with coworkers and supervisors, in contravention of record evidence that she characterizes as "uncontradicted." Statement of Errors at 17-18.

Nonetheless, as the commissioner points out, *see* Opposition at 20, the plaintiff's argument relies almost entirely on her subjective allegations, and she does not challenge the ALJ's detailed discussion discounting them in part, *see* Statement of Errors at 17-18; Record at 36-38. Nor does she challenge the ALJ's reliance on the mental RFC assessment of agency nonexamining consultant Brian Stahl, Ph.D., who assessed no such limitations, or her discounting of the opinions of Claire Koenig, LCSW, and Francoise E. Paradis, Ed.D. *See* Statement of Errors at 17-18; Record at 36, 39-41.

Remand, accordingly, is unwarranted on the basis of this point of error.

### E. Failure to Resolve Asserted Conflict Between VE's Testimony and DOT

The plaintiff next contends that the ALJ erred in failing to resolve a conflict between certain testimony of the vocational expert (VE) at hearing and the Dictionary of Occupational Titles (U.S. Dep't of Labor 4th ed., rev. 1991) (DOT). *See* Statement of Errors at 19; *Jessica O. v. Saul*, No.

2:18-cv-00370-GZS, 2020 WL 601381, at *5 (D. Me. Feb. 7, 2020) (rec. dec., *aff'd* Feb. 25, 2020) (Social Security Ruling 00-4p "imposes an affirmative obligation on [ALJs] to (i) inquire whether there is any conflict" between VE testimony and the DOT, (ii) "elicit a reasonable explanation for any apparent conflict, and (iii) resolve said conflict, regardless of how it was identified.") (citation, internal quotation marks, and emphasis omitted).

The plaintiff asserts that, although the VE testified that a person who could not work with the public could perform the job of cleaner/housekeeper as it is generally performed, the DOT indicates that such individuals "render[] personal assistance to patrons." Statement of Errors at 19 (quoting DOT § 323.687-014)).

As the commissioner rejoins, *see* Opposition at 23-24, any error is harmless. The ALJ made two alternative findings, neither of which the plaintiff challenges: that the plaintiff was capable of returning to past relevant work as a cleaner/housekeeper as she actually performed it and that she was capable of performing other work existing in significant numbers in the national economy, *see* Record at 41-42.

Remand, accordingly, is unwarranted on the basis of this final point of error.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for*

*oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.*

Dated this 15th day of November, 2020.

<u>/s/ John H. Rich III</u>
John H. Rich III
United States Magistrate Judge
